356 So.2d 936 (1977)
STATE of Louisiana
v.
James CASS.
No. 60468.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied April 6, 1978.
*938 Irving M. Greenberg, Jack H. Kaplan, Gamm, Greenberg & Kaplan, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Eugene W. Bryson, Jr., Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
James Cass was indicted by the grand jury for the Parish of Caddo for the crime of armed robbery in violation of La. R.S. 14:64. After trial by jury, defendant was found guilty as charged and was sentenced to serve thirty-three years at hard labor without benefit of parole, probation or suspension of sentence, which sentence was to run consecutively with any other sentence which defendant was to serve. On appeal, he relies on fifteen assignments of error for reversal of his conviction and sentence.[1] We will follow the order of assignments of error as listed in the record rather than as set forth in defendant's brief to this court.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred in denying his motion to quash the petit jury venire. He argues that the drawing of the petit jury venire from a general venire selected from the voter registration rolls and the improper excusal of members of the petit jury venire by the trial judge resulted in a jury venire in which persons of the lower socio-economic level of the parish had been systematically excluded.
At the hearing on the motion to quash, defendant presented only the testimony of James H. Greene, a member of the Caddo Sheriff's Department who supervised the service of jury subpoenas. His testimony related only to the manner in which the subpoenas were served. He stated that his office had nothing to do with the selection of the general venire from which the petit jury venire was drawn.
This court has approved the selection of general venires from voter registration rolls absent a showing of discrimination against a particular class of persons. State v. Daigle, 344 So.2d 1380 (La.1977). In the instant case, the general venire was selected at random and by lot from the voter registration rolls of the parish. Hence, there is no infirmity in the petit jury venire drawn from the general venire on this account. Furthermore, La.Code Crim.P. art. 783 authorizes the court to excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case if jury service would result in "undue hardship or extreme inconvenience." We have held that a defendant need not be present when the trial judge excuses prospective jurors before his case is called for trial. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Williams, 258 La. 801, 248 So.2d 295 (1971). Moreover, the trial court is vested with broad discretion in excusing prospective jurors for undue hardship. State v. Ivy, 307 So.2d 587 (La.1975). This discretion to release prospective jurors in advance of voir dire examination is not to be disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Sheppard, supra; State v. Gomez, 319 So.2d 424 (La.1975). In the instant case, defendant makes no such showing; he merely makes the bare allegation that the trial judge abused his discretion in excusing prospective jurors prior to trial.
*939 To support a challenge made to the composition of a jury venire, defendant must demonstrate that the state has not complied with statutory procedures for the selection of the venire or that there has been a systematic discrimination affecting a class of persons in the selection of the jury panel. State v. Taylor, 347 So.2d 172 (La. 1977). No such showing has been made here. Hence, the trial judge properly denied defendant's motion to quash the petit jury venire.

Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in permitting the introduction of evidence which established that during the course of the armed robbery for which defendant was being tried, defendant raped the girlfriend of the victim of the armed robbery. He argues that the evidence of the other crime was inadmissible and alternatively, if it was admissible, its prejudicial effect on the jury outweighed its probative value.
La.R.S. 15:447 and 448 provide:
La.R.S. 15:447
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
La.R.S. 15:448
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
A review of the evidence presented at trial reveals that the rape of the robbery victim's girlfriend, which was committed during the course of the armed robbery, was inseparably intertwined with the armed robbery in time and place. As such, it was an immediate concomitant of it and formed in conjunction with it one continuous transaction. Therefore, evidence of the rape was admissible as part of the res gestae. State v. McCoy, 337 So.2d 192 (La. 1976); State v. Curry, 325 So.2d 598 (La. 1976); State v. Robinson, 302 So.2d 270 (La.1974); State v. Matthews, 292 So.2d 226 (La.1974). Moreover, evidence of the rape was highly relevant to establish the identity of the perpetrator of the armed robbery, a crucial issue in the case, and to prove that the robbery was committed by force and intimidation, an essential element of the crime of armed robbery. Hence, the probative value of the evidence clearly outweighed any prejudicial effect.
Assignment of Error No. 2 has no merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial judge erred in overruling his objection to cross-examination by the state of defendant concerning a prior conviction for the crime of escape. He argues that evidence of his prior conviction for escaping from a prison where he was being held pending trial on the instant charge as well as other criminal charges was improperly offered by the state to prove that he was guilty of the instant crime.
At trial, defendant testified on his own behalf denying any involvement in the armed robbery for which he was on trial. On cross-examination, he was questioned by the district attorney as to whether he had ever been convicted of any offense which he denied. After repeated admonitions by the prosecutor to "think again," defendant admitted that he had been convicted of "fighting" but denied having been convicted of any other offense. Thereupon, the prosecutor asked him if he had been convicted of escape to which he replied in the affirmative. Defense counsel then objected and requested that the jury be removed. Outside of the presence of the jury, defense counsel voiced his objection to any reference to the prior escape conviction but failed to state any basis for his objection at that time.
*940 Article 841 of the Code of Criminal Procedure provides that an irregularity or error cannot be availed of after verdict unless defendant has made known to the court his objection and the grounds therefor. It is well settled that defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to rule on it and to prevent or to cure the error. An objection stating no basis presents nothing for this court to review. State v. Lewis, 353 So.2d 703 (La.1977); State v. Burnette, 337 So.2d 1096 (La.1976); State v. Sosa, 328 So.2d 889 (La.1976).
In any event, La.R.S. 15:495 provides:
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
In the instant case, evidence of defendant's prior conviction for escape was not offered, as alleged by defendant, to prove defendant's guilt of the instant crime. Rather, evidence of his prior conviction was properly offered by the state for the purpose of impeaching his credibility pursuant to the above provision. We therefore conclude that the trial judge did not err in overruling defendant's objection to the cross-examination of defendant by the state as to his prior conviction.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial judge erred in permitting an expert witness to express his opinion in response to a hypothetical question as to when a latent palmprint had been placed on the car involved in the armed robbery where no "control test" had been conducted to determine when the latent print had been placed on the vehicle.
At trial, James Hood, the supervisor of the records and identification division of the Caddo Parish Sheriff's Department, was qualified without objection as an expert in the field of fingerprinting. He testified that he compared a latent palmprint which had been lifted from the car involved in the armed robbery shortly after the crime was committed with defendant's prints and found the prints to be identical. The expert witness was then posed a hypothetical question based on facts presented in evidence that on Saturday afternoon a high school boy cleaned and washed his car in preparation for a date that evening. Later that night, a latent palmprint was lifted from the top of the trunk at the exact spot where an identification officer was directed to search for latent prints of a suspect who had earlier committed a crime involving the vehicle. Based on the foregoing facts, Hood was asked when in his opinion the latent palmprint would have been placed on the trunk of the car. Defense counsel objected to the hypothetical question on the ground that, in the absence of a control test having been conducted to determine how long the print had been on the vehicle, no opinion could be expressed by the witnesses as to when the print had been placed on the car. The trial judge overruled the objection but permitted defendant, on his request, to question the witness with reference to a control test. At the conclusion of this line of questioning, defendant reurged his objection to the hypothetical question but his objection was again overruled. Hood then responded that, because of its excellent quality, the latent palmprint lifted from the vehicle would have been placed on the car after the car had been washed on the day on which the crime was committed.
An opinion of an expert witness on facts not within his personal knowledge may be elicited by propounding a hypothetical question which is in proper form, provided that the hypothesis assumes only facts which the evidence proves or tends to *941 prove. State v. Schouest, 351 So.2d 462 (La.1977). If the record supports the facts assumed, the hypothetical question is proper.
In the instant case, the evidence presented at trial revealed that Danny Goode, the victim of the crime, on the afternoon of the robbery had cleaned and washed his car in anticipation of his date that night. During the course of the armed robbery, the perpetrator of the crime locked Goode in the trunk of the car. A latent palmprint of very high quality was lifted from the top of the trunk of the car later that night after an identification officer was directed to the spot where defendant had placed his hand on the trunk of the car in locking Goode in the trunk. The record supported the facts assumed in the hypothetical question; therefore, the question was proper and the expert witness could express his opinion as to when the latent palmprint had been placed on the vehicle. The fact that a control test had not been conducted by the identification officer to determine how long the latent print had been on the vehicle addresses itself to the weight of the witness' testimony rather than its admissibility. Hence, the trial judge correctly overruled defendant's objections and permitted the expert witness to express his opinion in response to the hypothetical question.
Assignment of Error No. 4 is without merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 7
In these assignments of error, defendant contends that the trial judge erred in ruling, over defense objection, that the in-court identifications of the eyewitnesses to the armed robbery were admissible. He argues that the in-court identifications were inadmissible in that they were tainted by impermissibly suggestive out-of-court identifications made by the witnesses. Prior to trial, defendant moved to suppress the out-of-court identifications but his motion was denied.
Danny Goode, victim of the armed robbery, and his date testified that on September 14, 1974, at approximately 9:30 p. m., while they were parked in Goode's car, defendant tapped on the window and requested their assistance in starting his stalled vehicle. Goode agreed and defendant got into the car. After travelling a short distance without any sight of a disabled vehicle, defendant pointed a gun at Goode's head and shortly thereafter instructed him to stop the car. He then ordered Goode to hand over his wallet from which he removed twenty-five dollars. Defendant then locked Goode in the trunk of the car and ordered his date to partially disrobe. At the girl's insistence, defendant then released Goode from the trunk and told the couple to get into the back seat of the car. After discovering that there was a tape player in the car and ripping it out, defendant ordered Goode at gunpoint to partially disrobe and to perform various sexual acts with his date. Upon seeing the couple merely feigning compliance with his order, defendant grew angry. After instructing Goode to get out of the car, he got into the backseat with Goode's date and forcibly raped her. The couple was then ordered to get into the front seat of the car and to drive up the road. Meanwhile defendant, who was in the back seat of the car, removed his T-shirt, ripped a speaker from the rear of the car, and wrapped it along with the tape player in his T-shirt. Warning the couple not to look back, he alighted from the car onto a road partially illuminated from the lighting of a nearby parking lot and fled. The witnesses testified that they could clearly see defendant during the course of the crime.
A few months later, ten photographs were displayed to the witnesses. Although eight of the ten photographs were mugshots while the remaining two, one of which was defendant's, were not, all of the photographs depicted men similar in appearance to defendant. Goode positively identified defendant at the photographic lineup. However, his date, who testified that she viewed a photographic lineup on two occasions, was only able on each occasion to *942 choose four photographs of men who resembled the perpetrator of the crime. Defendant's picture was among the four chosen. On cross-examination, she admitted that after viewing the second photographic lineup and choosing the same four photographs which she had chosen at the first lineup, a police officer pointed to defendant's picture and informed her that he was the man who had been "picked up" in connection with the crime, to which she replied that she had thought that he was the perpetrator of the crime.
After a review of the record, we find no showing that the out-of-court identifications made by the witnesses were impermissibly suggestive or conducive to mistaken identification so as to deny defendant due process of law. The fact that two of the ten photographs, one of which was defendant's, were not mugshots does not render the out-of-court identifications impermissibly suggestive where the photographs depicted men similar in appearance to defendant. Nor do we find that the information revealed to one of the eyewitnesses of the crime that defendant was the suspect in the case renders her out-of-court identification impermissibly suggestive in view of the fact that the information was not disclosed to her until after she had made her out-of-court identification. Moreover, the witness' inability to positively identify defendant at the pretrial photographic lineups does not render her later in-court identification inadmissible, for the failure to positively identify a suspect at a pretrial lineup is a matter which addresses itself to the weight of a witness' testimony rather than its admissibility. State v. Batiste, 318 So.2d 27 (La. 1975).
But, even if we assume arguendo that the out-of-court identifications were tainted, if the in-court identifications had a source independent of the out-of-court identifications, then the in-court identifications do not violate defendant's due process rights. State v. Anthony, 332 So.2d 214 (La.1976); State v. Peevy, 321 So.2d 324 (La.1975); State v. Payton, 294 So.2d 211 (La.1974); State v. Moseley, 284 So.2d 749 (La.1973); State v. Newman, 283 So.2d 756 (La.1973); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
In the instant case, both witnesses testified that, during the course of the crime, they could clearly see defendant. Defendant was viewed at close range by both witnesses for some period of time and each witness was able to positively identify him at trial. In view of the totality of the circumstances, we are convinced that the in-court identifications were based independently upon the observations of the witnesses at the time of the crime. Therefore, since the in-court identifications had a source independent of the out-of-court identifications, they did not violate defendant's due process rights.
For the above reasons, these assignments of error lack substance.

ASSIGNMENTS OF ERROR NOS. 6 AND 12
In Assignment of Error No. 6, defendant contends that the trial judge erred in denying his pretrial motion to suppress the out-of-court identifications without affording defendant a hearing on the motion.
The record reflects that on October 27, 1975, a hearing was conducted during which defendant's motion to suppress the out-of-court identifications was argued along with several other motions filed on his behalf. Defense counsel argued at the hearing that the out-of-court identifications should have been suppressed since defendant was not represented by counsel at the photographic lineups. The motion to suppress was denied. Since the record fully supports the fact that defendant was afforded a hearing on his motion to suppress the out-of-court identifications, his contention is without merit.
In Assignment of Error No. 12, defendant contends that the trial judge erred in denying his motion to suppress the out-of-court identifications in which he alleged, in addition to the grounds previously considered in Assignments of Error Nos. 5 and *943 7, that the out-of-court identifications should be suppressed since he was not afforded counsel at the pre-indictment photographic lineups.
A criminal defendant does not have a constitutional right to have counsel present at photographic displays conducted by the state for the purpose of attempting to secure an identification of the perpetrator of a crime. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); State v. Matthews, 322 So.2d 159 (La.1975). Hence, the trial judge properly denied defendant's motion to suppress on this ground.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
In these assignments of error, defendant contends that the trial judge erred in overruling his objections to the introduction into evidence by the state of certain photographs. He argues that the state failed to lay a proper foundation for their introduction into evidence.
It is a well-settled rule that a photograph need not be identified by the person who took it to be admissible in evidence. State v. Vincent, 338 So.2d 1376 (La.1976); State v. Freetime, 334 So.2d 207 (La.1976); State v. Forbes, 310 So.2d 569 (La.1975); State v. Browning, 290 So.2d 322 (La.1974). Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy and when they tend to shed light upon the matter before the court. State v. Freetime, supra; State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970). Sufficiency of identification of a photograph for purpose of admissibility thereof into evidence rests largely within the discretion of the trial judge. State v. Freetime, supra; State v. Fox, 251 La. 464, 205 So.2d 42 (1967).
In Assignment of Error No. 8, defendant challenges the introduction into evidence of two photographs which depicted enlargements of the latent palmprint lifted from the vehicle involved in the crime and of a known print taken from defendant. At trial, Don Bennett, a member of the Caddo Parish Sheriff's Office on the date that the crime was committed, testified that he lifted the latent palmprint from the vehicle involved in the armed robbery shortly after the crime was committed and later compared it with a known print of defendant which he had taken from him. Bennett stated that the two prints were identical. He was then asked to examine the photographs and to state whether he recognized them. He replied that they depicted enlargements of the prints which he had previously taken from the vehicle and defendant. Admitting that he had not made the enlargements himself, he testified that they were made by the Shreveport Police Department. Over defense objection, the photographs were admitted into evidence. Subsequently, James Hood, formerly of the Shreveport Police Department, testified that he had made the enlargements of the prints.
There is no merit to defendant's contention. Bennett testified that the photographs accurately depicted the prints which he had taken from the vehicle and defendant. Thus, the state laid a proper foundation for their introduction into evidence. Moreover, the photographer who made the enlargements later verified them. Hence, the trial judge correctly allowed the photographs in evidence.
In Assignment of Error No. 9, defendant challenges the admission in evidence of a photograph taken of him.
At trial, defendant testified in his own defense. On cross-examination, he denied that he had ever worn his hair parted down the middle, the hairstyle allegedly worn by the perpetrator of the crime as described by the eyewitnesses to the police. He was then shown a photograph and admitted that the picture was of him. The photograph depicted defendant wearing his hair parted down the middle. Over defense objection, the photograph was admitted in evidence.
*944 We find that the trial judge properly permitted the introduction of defendant's photograph in evidence. Prior to its introduction, defendant admitted that it accurately depicted him. The state thereby laid a proper foundation for its admission in evidence.
For the above reasons, these assignments of error lack substance.

ASSIGNMENT OF ERROR NO. 10
Both the victim and his date testified to the fact that the victim had been placed in the trunk of the car by defendant during the course of the crime. Thereafter, a fingerprint expert testified that the victim's date related to him that she recalled a particular place where defendant had touched the vehicle and directed him to that spot. Defendant's objection to the testimony on the ground of hearsay was overruled by the trial judge. The expert witness continued that, as a result of this information, he processed the car for latent prints at that particular place, which was on the left side of the trunk of the vehicle, and was able to lift a latent print which was later positively matched with defendant's known print.
A well-known rule is that evidence is non-hearsay which is offered not to prove the truth of the facts recited, but to prove that the utterance occurred. State v. Williams, 341 So.2d 370 (La.1976); State v. Monk, 315 So.2d 727 (La.1975); State v. White, 301 So.2d 321 (La.1974). The testimony of the fingerprint expert was not hearsay because, although it related the statement of a third person, it was offered to prove that the utterance occurred, thereby prompting the expert to process a particular place on the vehicle for latent prints, and not to prove the truth of the statement of the third person, i. e., that defendant had in fact touched the vehicle at that spot. Hence, the trial judge correctly overruled defendant's objection.
Assignment of Error No. 10 is without merit.

ASSIGNMENTS OF ERROR NOS. 11 AND 13
In Assignment of Error No. 11, defendant complains that, in response to his motion to disclose favorable evidence, the state failed to inform him that Goode allegedly identified an individual named Thornell as the perpetrator of the crime. In Assignment of Error No. 13, he further argues that he was prejudiced by the state's failure to disclose that Goode's girlfriend had in fact positively identified him at the photographic lineups as the perpetrator of the crime.
In his motion to disclose favorable evidence, defendant requested the names of all persons whom the police had suspected of committing the instant crime, as well as information in the possession of police authorities which led them to suspect these individuals. Additionally, he sought information as to whether either witness to the crime had been unable to identify him. In response to these requests, the state acknowledged that persons other than defendant who fit the general description of the perpetrator of the crime as given by the witnesses had been interviewed and detained temporarily for investigative purposes but were released after further investigation established that they were not involved in the crime. However, the state refused to disclose the identities of these individuals. The state also responded that Goode's girlfriend was only able at the photographic lineups conducted prior to trial to select four photographs of men who resembled the armed robber, one of which depicted defendant.
At trial on cross-examination by defense counsel, Goode admitted that approximately three to four weeks after the crime occurred he notified the police that he had seen a man named Thornell who resembled the perpetrator of the offense. However, he testified that he later determined that in fact Thornell was not the individual who had committed the crime.
Defendant's contention that he was prejudiced by the state's failure to disclose that Goode had reported Thornell to the police as a possible suspect in the *945 case is without merit. It is well settled that the prosecution may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or punishment. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Williams, 349 So.2d 286 (La.1977); State v. Robinson, 342 So.2d 183 (La.1977). However, false leads followed out by police certainly are not evidence tending to negate the guilt of defendant. State v. Linkletter, 345 So.2d 452 (La.1977); State v. Nix, 327 So.2d 301 (La.1975). Hence, the state was under no duty to disclose to defendant the name of the suspect. Moreover, defendant cannot claim to have been prejudiced by the state's failure to disclose the suspect's identity since this information was apparently known by defendant prior to trial since he used it during trial to attack Goode's identification of him as the perpetrator of the crime.
With respect to defendant's contention that the state erred in failing to disclose to him that Goode's girlfriend had in fact identified him at the photographic lineups, it must likewise be rejected. This evidence was not exculpatory evidence required to be disclosed by the state under Brady v. Maryland, supra. Moreover, the evidence presented at trial revealed that the witness never positively identified defendant at the photographic lineups but rather only chose four photographs of men resembling the perpetrator of the crime, one of which was of defendant. This information had been properly disclosed by the state to defendant in response to this motion to disclose favorable evidence.
For the above reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant assigns as error the trial judge's denial of his motion for a new trial on the ground that the verdict is contrary to the law and the evidence. It is well settled that such an allegation presents nothing for this court's appellate review. State v. Williams, 343 So.2d 1026 (La.1977); State v. Jack, 332 So.2d 464 (La.1976); State v. Bartley, 329 So.2d 431 (La.1976).
In brief to this court, defendant contends that the trial judge erred in denying his motion for a new trial on the ground that there was no evidence to support his conviction. A new basis for an objection cannot be raised for the first time on appeal. State v. O'Blanc, 346 So.2d 686 (La. 1977); State v. Williams, supra; State v. Marks, 337 So.2d 1177 (La.1976); State v. Powell, 325 So.2d 791 (La.1976); State v. Forbes, 310 So.2d 569 (La.1975). Nevertheless, we have reviewed the record and find substantial evidence to support defendant's conviction.
Assignment of Error No. 14 lacks merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Defendant has neither briefed nor argued Assignment of Error No. 15. We therefore consider it to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La.1975).